UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19-CV-307-CHL

**DAVID RAY,** **Plaintiff,**

v.

**SECURA INSURANCE,** **Defendant.**

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion for Summary Judgment (DN 39) filed by Defendant Secura Insurance ("Secura") and the Motion to Amend/Withdraw Admissions to Defendant's Second Set of Requests for Admission Pursuant to FRCP 36(b) (DN 42) filed by Plaintiff David Ray ("Ray"). Ray responded to Secura's motion, and Secura filed a combination reply in support of its motion and response to Ray's motion. (DNs 43, 46.) Ray did not file a reply in support of his motion (DN 42), and his time to do so has expired. Therefore, these matters are ripe for review. The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DNs 37, 47.)

For the reasons set forth below, Secura's Motion for Summary Judgment (DN 39) is **GRANTED**, and Ray's Motion to Amend/Withdraw Admissions (DN 42) is **GRANTED**.

**I.    BACKGROUND**

This action arises from a June 28, 2018, motor vehicle accident. Plaintiff Ray was rear-ended by non-party James Evans in Hardin County, Kentucky. (DN 1-2, at PageID # 15; DN 39, at PageID # 115-16.) At the time of the collision, Ray was driving a 2011 Chevy Silverado 3500 that was one of four vehicles insured under a commercial automobile insurance policy issued by

Defendant Secura to Ray's Central Kentucky Concrete, Inc. ("Ray's Concrete"), a Kentucky corporation, (the "Policy").[1] (DN 39-1, at PageID # 115-16; DN 39-2; DN 39-3.) Ray is the incorporator, owner, operator, and registered agent of Ray's Concrete. (DN 39-1, at PageID # 116; DN 39-2; DN 43, at PageID # 216-17.)

Ray settled with Evans's insurance company, Shelter Mutual Insurance Company, for $50,000 for injuries he sustained during the accident. (DN 1-2, at PageID # 16; DN 39-1, at PageID # 116.) He then brought the instant suit against Secura for breach of contract and common law and statutory bad faith in Hardin Circuit Court, Hardin County, Kentucky. (DN 1-2, at PageID # 14-21.) Ray seeks underinsured motorist ("UIM") coverage pursuant to the Policy, alleging that Evans was underinsured at the time of the accident. (*Id.*) Secura removed to this Court. (DN 1.) At the request of the Parties, the Court bifurcated Ray's bad faith claims for both discovery purposes and trial. (DN 11.) Secura now asks this Court for a ruling that the Policy does not permit Ray to stack the UIM coverages for the other vehicles he was not driving at the time of the accident. (DNs 39, 39-1.)

On January 9, 2020, Secura served its Second Requests for Admissions, Interrogatories and Requests for Production upon Ray. (DNs 22, 39-4.) The three requests for admission therein, Nos. 7-9, sought admissions from Ray that he was not a named insured under the Policy, that he was not entitled to stack UIM coverage, and that the applicable Policy limit to Ray was "the limit shown in the Schedule or Declarations appli[c]able to the vehicle that 'insured' was 'occupying' at the time of the 'accident.'" (DN 39-4.) Ray did not respond to the Request Nos. 7-9 within thirty days of service as required by Fed. R. Civ. P. 36. (DN 39-1, at PageID # 117; DN 42.)

---

[1] Though Secura stated in its motion that the Policy provided coverage to four vehicles, pursuant to the Policy documents submitted with its motion, coverage for one of the vehicles, a 2015 Chevrolet 2500 was not effective until December 5, 2018, after the date of the accident. (DN 39-3, at PageID # 128-30.)

Accordingly, in its instant motion for summary judgment, Secura treats all three issues as having been admitted by Ray. (DN 39-1, at PageID # 117.) Concurrently with his response to Secura's Motion for Summary Judgment, Ray filed a motion to withdraw his admissions to Request for Admission Nos. 7-9. (DN 42.)

## II. DISCUSSION

### A. Ray's Motion to Amend/Withdraw Admissions (DN 42)

Ray moved to withdraw his admissions to Secura's Request for Admission Nos. 7-9. (DN 42.) Therein, his counsel indicated that the requests for admission were "missed due to [Ray's] counsel being absent from the office as a result of family illness" and that counsel was not aware of them until Secura filed its dispositive motion on June 1, 2020. (*Id.* at PageID # 203.) Ray argued that the Court should permit him to withdraw his admissions pursuant to Fed. R. Civ. P. 36(b).

A request for admission is deemed admitted if a party fails to serve a timely response. Fed. R. Civ. P. 36(a)(3). However, the Court has discretion to permit withdrawal or amendment of an admission where (1) "it would promote the presentation of the merits of the action" and (2) "the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b). The first prong of Rule 36(b) is satisfied "when upholding the admission would practically eliminate any presentation on the merits of the case." *Wells v. Bishop*, No. 1:05-CV-00079-JHM, 2006 WL 8456586, at *2 (W.D. Ky. Dec. 18, 2006) (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). As to the second prong, "[t]he prejudice contemplated by [Rule 36(b)] is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 154 (6th Cir. 1997) (quoting *Brook Vill. N. Assocs. v. Gen. Elec. Co.*,

3

686 F.2d 66, 70 (1st Cir.1982)). Instead, the prejudice contemplated "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Id.* (quoting *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir.1991)); *see also Siewertsen v. Worthington Indus., Inc.*, 783 F. App'x 563, 569 (6th Cir. 2019) (noting that Court did not abuse discretion in allowing withdrawal of admission in part because it reopened discovery as to the issue to avoid prejudice).

Ray argued that the issues in Request for Admission Nos. 7-9 go to the heart of the arguments in Secura's Motion for Summary Judgment such that the first prong of Rule 36(b) is satisfied. He also argued that because discovery has been completed in this case, the only prejudice Secura might suffer is that it would have to prevail on its dispositive motion independent of any admissions from Ray. (DN 42, at PageID # 205-06.) In response, Secura emphasized that Ray had not shown a sufficient reason for his failure to respond. (DN 46, at PageID # 254.) However, it also admitted that the issue presented in its summary judgment motion was related to the interpretation of an insurance contract, which it asserted was an issue of law to be determined by the Court. (*Id.*) Under these circumstances, the Court concludes that permitting Ray to withdraw his admissions to Request for Admission Nos. 7-9 is appropriate. Withdrawing the admissions would promote presentation of the merits because it would allow the Court to reach the underlying arguments in Secura's dispositive motion instead of having to deem Ray as having admitted the same. Further, as the Court agrees that the core issues in Secura's motion are ones of law, the Secura is not prejudiced by allowing Ray to withdraw his admissions at this stage. Secura needs no additional facts or evidence in order to support its position other than those already before the Court.

4

For these reasons, the Court will grant Ray's Motion to Amend/Withdraw Admissions (DN 42) and deem the new responses tendered with Ray's motion (DN 42-1) served as of the date of this opinion.

### B. Secura's Motion for Summary Judgment (DN 39)

#### 1. Summary Judgment Standard

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies the burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

**2. Analysis**

Secura asked the Court to rule that Ray may not stack the UIM coverages available for each covered auto under the Policy. (DN 39; DN 39-1, at PageID #115.) It emphasized that because the named insured under the Policy is an entity, Ray's Concrete, and not an individual, stacking is not permitted by the express and unambiguous terms of the Policy. (DN 39-1, at PageID # 119.) In response, Ray argued that the Policy language is ambiguous and should be construed in his favor to permit stacking. (DN 43, at PageID # 219-22.) In the alternative, he argued that if Secura's interpretation is correct, the UIM coverage is illusory if it is not stackable. (*Id.* at 223.) The issues raised by Secura are questions regarding the interpretation of an insurance contract, which are ones of law to be determined by the Court. *See K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751, 753 (Ky. Ct. App. 2005) (citing *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky. Ct. App. 1998) and *Snow v. W. Am. Ins. Co.,* 161 S.W.3d 338 (Ky. Ct. App. 2004)); *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (citing *Stone v. Ky. Farm Bureau Mut. Ins. Co.,* 34 S.W.3d 809, 810 (Ky. Ct. App. 2000)). The Parties agree that Kentucky law applies. (DN 39-1, at PageID # 120; DN 43.)

Under Kentucky law, "[t]o ascertain the construction of an insurance contract, one begins with the text of the policy itself." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 430 (Ky. Ct. App. 2013). "The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). "[T]he terms should be interpreted in light of the usage and understanding of the average person." *Stone*, 34 S.W.3d at 811 (citing *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986)). Where a policy is subject to two or more reasonable interpretations either on the face of the policy or as applied to a claim, any ambiguity should be resolved in favor of the insured. *K.M.R.,* 171

S.W.3d at 753; *Ky. Ass'n of Cntys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 630 (Ky. 2005); *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994). However, "a nonexistent ambiguity [should not] be utilized to resolve a policy against the [insurance] company," *St. Paul*, 870 S.W.2d at 226, and although the court "must [ ] give the policy a reasonable interpretation, [ ] there is no requirement that every doubt be resolved against the insurer." *Stone*, 34 S.W.3d at 811.

          **a)**        **Relevant Policy Provisions**

Here, the Policy listed "Ray's Central Ky Concrete, Inc." as the named insured, including in the endorsement to the Policy dealing with UIM coverage. (DN 39-3, at PageID # 127-28, 173; DN 39-1, at PageID # 119.) In the declarations, the Policy provided:

```
THE NAMED INUSRED IS:        Corporation
BUSINESS DESCRIPTION:        Concrete Construction
```

(DN 39-3, at PageID # 133.) As of December 22, 2017, the Policy listed three covered autos: a 2011 Chevrolet 2500, a 2003 Ford F550, and a 1994 International 4900. (*Id.* at 135.) Effective December 5, 2018, the Policy also listed a 2015 Chevrolet 2500 as a covered auto. (*Id.* at 128-30.) The Schedule of Covered Autos at the beginning of the Policy listed each vehicle as having UIM limits of $100,000. (*Id.* at 129, 135.)

In the UIM endorsement, the Policy defined "Who is An Insured" as follows:

> B.     Who is An Insured
>
> If the Named Insured is designated in the Declarations as:
>
> 1. An individual, then the following are "insureds":
>
>     a. The Named Insured and any "family members".
>     b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

7

    c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
  2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
    b. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

(*Id.* at 173.) In relevant part, the UIM endorsement to the Policy also provided as follows regarding the limits of insurance applicable to UIM coverage:

 D. Limits of Insurance

  1. . . . If there is more than one covered "auto", our Limit of Insurance for any one "accident", if the "bodily injury" is sustained by an individual Named Insured or any "family member", is the sum of the limits applicable to each covered "auto".

  . . .

  2. If the "bodily injury" is sustained by any "insured", other than the individual Named Insured or any "family member", in an "accident" in which neither such Named Insured nor any "family member" sustained "bodily injury", the Limit of Liability shown in the Schedule or Declarations for this coverage is our maximum limit of liability for all damages resulting from any such "accident".

(*Id.* at 174.) The Schedule for the UIM endorsement listed "100,000 Each 'Accident'" as the "Limit of Insurance." (*Id.* at 173.)

### b) Construction of Policy Language

Secura contended that the Policy language quoted above unambiguously provides that the limit of UIM coverage available to Ray is $100,000 because Ray is not an "individual Named Insured." Instead, the Named Insured under the Policy is Ray's Concrete, a corporation. (DN 39-1, at PageID # 115, 119, 122.) Ray argued that the Policy's use of terms such as "you," "your,"

8

"relative," and "household" created an ambiguity because they suggested that "Secura intended human beings (and not merely business entities) to be insureds under the [P]olicy." (DN 43, at PageID # 219.)  Ray argued that *Hartford Accident & Indemnity Company v. Huddleston*, 514 S.W.2d 676 (Ky. 1974), and *Home Folks Mobile Homes, Inc. v. Meridian Mut. Ins. Co.*, 744 S.W.2d 749 (Ky. Ct. App. 1987), compel that result, but both are distinguishable from the instant case.  In *Huddleston*, the former Kentucky Court of Appeals found that a garage liability policy issued to a partnership provided uninsured motorist ("UM") coverage to one of the partner's sons. *Huddleston*, 514 S.W.2d at 677-78.  The Kentucky Court of Appeals cited to historical dispute about "whether a partnership is a legal entity or merely an aggregate of persons acting together" and found that the insurance policy at issue "plainly contract[ed] for the 'aggregate' concept to be applied." *Id.* at 678.  But the instant case involves a corporation, not a partnership.  In *Home Folks*, Nanette Berry, one of two owners of a corporation, sought UM coverage after she was injured in a car accident. *Home Folks*, 744 S.W.2d at 749.  The Kentucky Court of Appeals found that the inclusion of an individual named insured endorsement to the business automobile policy issued to Berry's corporation created an ambiguity as to whether the Policy applied to her, especially given testimony by the other owner of the company, her father, that he sought "full coverage" insurance to protect both "his business and family." *Id.* at 749-50.  However, here, Ray cited no such testimony and the Policy language at issue is different given the facial distinction drawn in the Policy between the coverage available where the Named Insured is an individual and where the Named Insured is an entity.  Indeed, when considered in context, the terms Ray argued create an ambiguity apply only when the Named Insured is an individual, which is not the case here.  Both the *Home Folks* and *Huddleston* cases are further distinguishable because they dealt with UM as opposed to UIM coverage.  As the Kentucky Supreme Court has explained since both the

*Huddleston* and *Home Folks* cases were decided, UIM and UM are separate and distinct types of coverage. *Philadelphia Indem. Ins. Co. v. Tryon*, 502 S.W.3d 585, 589-90 (Ky. 2016) ("[T]here is a significant difference between UM and UIM coverage both in legislation and in our own insurance-law jurisprudence.").

Based on the above Policy language, the Court concludes that the language of the Policy unambiguously provides that where the Named Insured is a corporation, stacking of UIM coverage is not permitted. The Policy repeatedly distinguished between circumstances where the Named Insured was an individual and where it was some other entity. It also clearly delineated that the Named Insured in this case was a corporation, not an individual. Under those circumstances, the UIM coverage provided for by the Policy is clear: "the Limit of Liability shown in the Schedule or Declarations for this coverage is our maximum limit of liability for all damages resulting from any such 'accident.'" (DN 39-3, at PageID # 174.) Ray's arguments are nothing more than an attempt to create an ambiguity where one does not otherwise exist. Accordingly, the Policy unambiguously provides no more than $100,000 in UIM coverage to Ray should he prevail on his breach of contract claim.

    c)  **Reasonable Expectations**

Ray also argued that given the personal nature of UIM coverage, he had a reasonable expectation that he, as the sole owner of the named insured, would be entitled to stack the available UIM coverages under the policy. (DN 43, at PageID # 221-22.) A line of Kentucky cases beginning with *Ohio Cas. Ins. Co. v. Stanfield*, 581 S.W.2d 555, 557 (Ky. 1979), and continuing in *Chaffin v. Kentucky Farm Bureau Ins. Co.*, 789 S.W.2d 754 (Ky. 1990), among others, interpreted the applicability of UM coverage and the availability of stacking by reference to

whether the insured had a "reasonable expectation of coverage." In particular, these cases emphasized that

> [UM] coverage is personal to the insured; that an insured who pays separate premiums for multiple items of the same coverage has a reasonable expectation that such coverage will be afforded; and that it is contrary to public policy to deprive an insured of purchased coverage, particularly when the offer of such is mandated by statute.

*Chaffin*, 789 S.W.2d at 756; *see also James v. James*, 25 S.W.3d 110, 112 (Ky. 2000) ("[P]ursuant to the doctrine of 'reasonable expectations,' when one has paid separate premiums on separate vehicles, he may reasonably expect to be able to stack those coverages."). That reasoning was eventually extended to UIM cases in *Allstate Ins. Co. v. Dicke*, 862 S.W.2d 327, 329 (Ky. 1993), because the Kentucky Supreme Court determined at that time that any distinction between the statutes governing UM and UIM coverage was not "sufficiently meaningful to permit a different result."

However, the Kentucky Supreme Court overruled *Dicke* in *Philadelphia Indem. Ins. Co. v. Tryon*. *Tryon*, 502 S.W.3d at 589-90. It emphasized that there were significant differences in both the legislation and jurisprudence related to UM coverage, which is mandatory, and UIM coverage, which is supplemental, such that the Kentucky Supreme Court saw "no reason to conflate" the two. *Id.* at 589. In particular, the Kentucky Supreme Court noted that portions of Kentucky's Motor Vehicle Reparations Act ("MVRA") dealing with UIM coverage make clear that "insurers are free to contract with insureds on the form and scope of [UIM] coverage, so long as the terms remain consistent with the remaining provisions of the MVRA." *Id.* at 588. The Kentucky Supreme Court held that "UIM coverage exclusions are not impermissible under Kentucky public policy and parties are at liberty to negotiate and customize policies to fit their own needs and desired levels of coverage." *Id.* at 592. In doing so, the Court noted that *Chaffin*, including the

11

doctrine of reasonable expectations discussed therein, was "appropriately limited to the facts of that case."[2] *Id.* at 589-90. It explicitly provided that while its "opinion d[id] not necessarily overrule *Chaffin* or its precedent with respect to UM coverage[,] . . . [the court] question[ed] whether the *Chaffin* Court's reasonable-expectation analysis truly synthesize[d] Kentucky contract principles or simply exist[ed] as a categorical rule to ensure that insureds always recover." *Id.* at 592. The court affirmed that reasonable UIM exclusion provisions were consistent with Kentucky public policy "so long as the plain meanings of the terms of the underlying policies are clear and unambiguous." *Id*.

Here, Ray's argument about his reasonable expectations tracks the analysis of the *Chaffin* court that was disfavored in *Tryon*. Ray appears to argue that because separate premiums were paid for the different covered autos under the Policy, he should be entitled to stack coverages. (DN 43, at PageID # 216-17, 221-22.) Such an argument is inconsistent with Kentucky law given *Tryon* and the Court's conclusion above that the applicable policy language was clear and unambiguous. Further, Ray did not argue nor did he provide any authority to support the proposition that the instant anti-stacking provision in the Policy is inconsistent with any particular portion o of the MVRA. Accordingly, Ray's argument regarding his "reasonable expectations" does not change the Court's finding above regarding the amount of coverage available to Ray under the Policy.

### d) Illusory Coverage

Ray also argued that if Secura's interpretation of its Policy is correct, the UIM coverage therein is illusory if he cannot stack the available UIM limits for the covered autos. (DN 43, at PageID # 223.) "The doctrine of illusory coverage, like the doctrine of reasonable expectations,

---

[2] In *Chaffin*, an injured motorist sought UM coverage from her own insurer pursuant to three separate policies, including one covering the vehicle in which she was injured. *Chaffin*, 789 S.W.2d at 755. She paid separate premiums for each policy. *Id.* The instant case is factually distinguishable from *Chaffin* both on grounds that Ray seeks UIM, not UM, coverage and that the Policy was issued to Ray's Concrete, not Ray himself.

12

operates to qualify the general rule that courts will enforce an insurance contract as written." *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. Ct. App. 2012). A policy is illusory where "if interpreted as proffered by the insurer, essentially denies the insured most if not all of a promised benefit." *Id.* (quoting 4 Bruner & O'Connor Construction Law § 11:34). In other words, illusory coverage is "coverage that is at least implicitly given under [a policy's] provisions and then taken away, whether by virtue of a prohibition or exclusion contained in the same policy, or by virtue of a strict legal definition." *Id.* at 129. Here, Ray argued that the Policy's UIM coverage is illusory because it purports to give first-class coverage to Ray's Concrete but none actually exists given that Ray's Concrete itself cannot occupy a covered auto or sustain bodily injury. (DN 43, at PageID # 223.) In response, Secura does not dispute that first class coverage does not exist but instead argued that Ray provided no authority requiring Secura to provide first class coverage under the circumstances. (DN 46, at PageID # 263.)

Kentucky law distinguishes between first-class insureds and second class insured with regard to both UIM and UM coverage. First class insureds are provided broad protections "regardless of their location or activity" and consist of the named "insured who bought and paid for the protection and who has a statutory right to reject uninsured [or underinsured] motorist coverage, and the members of his family residing in the same household." *Stanfield*, 581 S.W.2d at 557. "Insureds of the second class are those who fall outside the first class, but who are nevertheless entitled to protection for damages from injury inflicted while they are occupying an insured vehicle." *James*, 25 S.W.3d at 113. Ray relied on *Solheim Roofing, LLC v. Grange Mut. Cas. Co.*, No. 2009-CA-455-MR, 2010 WL 323296, at *1 (Ky. Ct. App. Jan. 29, 2010), in support of his argument that he should be deemed a first class insured and that, as such, the Policy's provisions were illusory. In *Solheim Roofing*, Donna and Roger Solheim were the owners and

13

members of Solheim Roofing LLC. *Id.* Donna claimed that a commercial automobile policy issued to the LLC afford her UIM coverage after she was involved in an accident. *Id.* The vehicle she was driving at the time of the accident was not specifically listed under the LLC's policy and she was not working at the time of the accident. *Id.* The court ultimately held that the policy's requirement that Donna be engaged in a business activity at the time of the accident in order to receive coverage was valid and enforceable and that Donna was not entitled to coverage on the facts of the case. *Id.* at *7-8. However, as part of its analysis, the Court of Appeals observed,

> While an LLC is a legal entity distinct from its members, as a practical matter naming an LLC as an insured in a UIM policy is essentially meaningless unless coverage extends to some person or persons associated with the company. It would be nonsensical to limit protection solely to the LLC since that entity—standing alone—cannot occupy or operate a motor vehicle or suffer bodily injury or death. Moreover, it would render any UIM coverage provided to that LLC entirely illusory in nature.

*Id.* at *6. The court then held that "[f]or purposes of classification—if such must be done—[it] believe[d] that [Solheim] must be considered an 'insured of the first class' in this case since she was an owner/member of the LLC to which the subject policy was issued and sold." *Id.* at *7. Ray argued that the reasoning in *Solheim* made the instant Policy illusory as to him. But the instant Policy language and the policy language in *Solheim* are different. While the policy in *Solheim* limited the definition of insured to "only members of the limited liability company while 'occupying' a covered 'auto' owned, hired or borrowed by the Named Insured and while acting within the scope of their duties in the conduct of the Named Insured's business," the instant Policy extends coverage to anyone occupying a covered auto regardless of their affiliation with the corporation of the business pursuits of the same. *Compare id.* at *2, *with* DN 39-3, at PageID # 173. This distinction makes the *Solheim* court's reasoning inapplicable to the instant case because Secura is not purporting to grant coverage only to corporation employees or owners.

14

Secura argued that *Solheim* was not dispositive of the instant case and instead pointed the Court to *Metzger v. Auto-Owners Ins. Co.*, No. 2016-CA-1625-MR, 2018 WL 480524, at *1-2 (Ky. Ct. App. Jan. 19, 2018). In *Metzger*, Diana and Gary Metzger were owners and members of Metzger's Country Store, LLC, a pet and feed store. Diana was injured by a third party while walking and sought to collect UIM benefits from Auto-Owners based on a commercial automobile policy issued to the LLC. The Metzgers argued that unless Diana was found to be a first-class insured and afforded coverage, the UIM coverage would be illusory. *Id.* at *2. The Kentucky Court of Appeals disagreed and found that the relevant policy language did not provide first-class coverage to the LLC, instead it required that the named insured be an individual before first-class coverage was available. *Id.* at *6. The Court of Appeals emphasized that the Metzgers had "cite[d] to no case or statutory law that requires all UIM policies provide first-class coverage under any and all circumstances." *Id.* Thus, the coverage was not illusory. *Id.* The Court finds *Metzger* more applicable on the facts of the instant case. Unlike the policy in *Solheim* and like the policy in *Metzger*, the instant Policy makes clear that first class coverage is only available where the Named Insured is an individual. (DN 39-3, at PageID # 173.) None of Ray's cases support the proposition that a policy is illusory where no first class coverage is provided to the named insured, nor is the Court aware of any such authority. Indeed, the Kentucky Court of Appeals recently upheld an anti-stacking provision based on nearly identical policy language to the instant Policy. *Consol. Ins. Co. v. Slone*, 538 S.W.3d 922 (Ky. Ct. App. 2018).

Accordingly, the Court finds that the coverage awarded by the instant Policy is not illusory.

### III. CONCLUSION AND ORDER

For the reasons set forth herein, IT IS HEREBY ORDERED as follows:

(1) Ray's Motion to Amend/Withdraw Admissions (DN 42) is **GRANTED**. Ray's prior admissions to Secura's Second Set of Requests for Admissions are **WITHDRAWN**, and Ray's tendered amended responses (DN 42-1) are deemed served as of the date of entry of this opinion.

(2) Secura's Motion for Summary Judgment (DN 39) is **GRANTED**. As set forth herein, no more than $100,000 of UIM coverage is available to Ray under the terms of the Policy.

*[signature]*

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record
   March 30, 2021